**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.:**

```
FILED by RAL D.C.

MAR 3 0 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI
```

GENESIS INDEMNITY INSURANCE
COMPANY, a Connecticut corporation,

      Plaintiff,

v.

CITY OF MIAMI BEACH, and BASHEBA
CHANDLER-MYERS as personal representative
of the ESTATE OF NORMAN BANKS,
and as Natural Guardian for ISAAC LEE,

      Defendants.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Genesis Indemnity Insurance Company ("GENESIS"), by and through the undersigned

counsel, hereby sues the CITY OF MIAMI BEACH, BASHEBA CHANDLER-MYERS as

personal representative of the ESTATE OF NORMAN BANKS, JR. and ISAAC LEE, for

declaratory relief as follows:

### JURISDICTION, VENUE AND THE PARTIES

1.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and

2202. Specifically, GENESIS seeks a declaratory judgment to determine its rights and

obligations, if any, to the Defendants, including but not limited to THE CITY OF MIAMI

BEACH pursuant to a policy of insurance issued to BOUCHER BROTHERS MANAGEMENT,

1

INC. and BOUCHER BROTHERS MIAMI BEACH, LLC d/b/a BOUCHER BROTHERS ("BOUCHER BROTHERS").

2.      This court has jurisdiction pursuant to 28 U.S.C. § 1332 as the underlying dispute, as alleged below, is among parties of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest, attorneys' fees, and costs.

3.      The Plaintiff, GENESIS, is a corporation incorporated under the laws of North Dakota, with its principal place of business in Stamford, Connecticut.

4.      The CITY OF MIAMI BEACH is a citizen and political subdivision of the State of Florida.

5.      Pursuant to 28 U.S.C. § 1332(c)(2), BASHEBA CHANDLER-MYERS as personal representative of the ESTATE OF NORMAN BANKS, JR., is a citizen of the State of Florida, and a plaintiff in the underlying action.

6.      ISAAC LEE is a citizen of the State of Florida and a plaintiff in the underlying action.

## FACTUAL ALLEGATIONS

## THE GENESIS INSURANCE POLICY

7.      GENESIS issued a commercial general liability policy (identified as Policy Number: ZYB008426) (the "Policy") to BOUCHER BROTHERS for the policy period of May 31, 2002 to May 31, 2003. (*See* the Policy attached hereto as Exhibit "A").

8.      The declarations page of the policy describes the locations of BOUCHER BROTHERS' business as those delineated in Endorsement GI-101. (*See* Exhibit "A", Declaration Page).

2

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

9.      The declarations page of the policy describes also the activities of the BOUCHER BROTHERS' business as the rental of boats including canoes, rowboats and kayaks (not equipped with motors) as well as the rental of beach chairs and umbrellas.

10.      In pertinent part, the policy provides as follows:

**Section I –**

**Coverage A – Bodily Injury and Property Damage Liability**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or suit that may result. But:

> **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance;

> **\*\*\***

> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(See Exhibit "A").

11.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. (See Exhibit "A", page 14 of 16 of the Commercial General Liability Coverage Form.)

3

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida  33131
Telephone:  (305) 530-0800; Facsimile:  (305) 530-0801

11O354202

**12.**      In pertinent part, the policy provides as follows:

**Section III-**

**Limits of Insurance**

1. The limits of insurance shown in the declaration and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

2. The general aggregate limit is the most we will pay for the sum of:

**a.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazards";…

5. Subject to 2. and 3. above, whichever applies, the each occurrence limit is the most we will pay for the sum of:

**a.** Damages under Coverage A; and

**b.** Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence".

     13.      Additionally, the GENESIS Policy contains several endorsements that are pertinent to this action:

     14.      One such endorsement is "Endorsement Form – CG 20 12 07 98" entitled "Additional Insured – State or Political Subdivisions – Permits" (the "Government AI Endorsement"). *See* Exhibit "A". The Government AI Endorsement amends the "persons insured" provision of the Policy to include the CITY OF MIAMI BEACH as an additional insured to the Policy.

4

110354202

15.     However, the Government AI Endorsement strictly limits the coverage available to the CITY for operations performed by BOUCHER BROTHERS "for which the state or political subdivision (i.e. the CITY) has issued a permit."

16.     The Government AI Endorsement specifically excludes coverage for "bodily injury" "arising out of operations performed *for* the state or municipality (i.e. the CITY)" (emphasis added by counsel).

17.     Specifically, the Government AI Endorsement to the Policy provides:

**Section II - Who is An Insured** is amended to include as an insured any state or political subdivision shown in the Schedule, subject to the following provisions:

1.  This insurance applies only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

2.  This insurance does not apply to:

    a.  "Bodily injury," "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; ...

(See Exhibit "A", CG 20 12 07 98)..

18.     Additionally, "Endorsement Form CG 20 26 11 85" entitled "Additional Insured – Designated Person or Organization" (the "Designated Person/Organization Endorsement"). This endorsement provides coverage to the CITY as an additional insured since it is named in the declarations, but only with respect to liability arising out of BOUCHER BROTHERS operations or premises rented to BOUCHER BROTHERS by the CITY.

19.     Specifically, Endorsement Form CG 20 26 11 85 provides:

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

5

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida  33131
Telephone:  (305) 530-0800; Facsimile:  (305) 530-0801

11O354202

(See Exhibit "A", CG 20 26 11 85).

20.     Another relevant policy endorsement is "Endorsement Form CG-105".   This

Endorsement provides:

> This endorsement forms a part of the policy to which it is attached and takes effect on the inception date of the policy.
>
> Coverage under this policy is **specifically limited to those operations and codes outlined in the declarations of this policy. This policy excludes coverage for operations not specifically listed and charged for in the coverage part of the policy or policy description.**   (emphasis added)

(See Exhibit "A").

21.     Finally, coverage under the policy is further defined by "General Endorsement,

GI-101", which specifically lists the locations which form a part of the policy as follows:

> It is hereby understood and agreed that the following locations will form a part of the policy:

13.     Lummus Park
        5th Street to 14th Court
        Miami Beach, FL 33139

14.     Ocean Terrace Park
        72nd Street to 75th Street
        Miami Beach, FL 33141

15.     North Shore Open Space Park
        79th Street to 85th Street
        Miami Beach, FL 33141

## FACTUAL BACKGROUND OF THE UNDERLYING LITIGATION

22.     On April 19, 2003, NORMAN BANKS, JR. the decedent, who was then 18 years

of age, went to Miami Beach with his mother (BASHEBA CHANDLER-MYERS), step-father

6

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

(Rufus Nathaniel Myers), his minor brother, ISAAC LEE, who was then 13 years of age, an infant baby sister, and three family friends, all of whom were minors (the "BANKS GROUP").

23.     No member of the BANKS GROUP had ever been to any part of Miami Beach before, with the sole exception of Rufus Nathaniel Myers.  Mr. Myers had been to Miami Beach on one prior occasion, on a "walk through" with a couple of friends, without going into the water, and at a "totally different" location than the area at issue in this litigation.

24.     The BANKS GROUP parked in a public parking space near the beach and upon entering the beach area, proceeded to an area immediately adjacent to the lifeguard stand located at 21st Street.

25.     The BANKS GROUP decided to locate within 30-50 feet of the lifeguard stand because they felt comfortable knowing that there were lifeguards right next to them.

26.     The BANKS GROUP brought with them from home their own comforters to lie on, and their own cooler with beer, drinks, and food.  They even brought their own umbrella.

27.     The BANKS GROUP did not rent an umbrella, chair or jet ski while they were at the beach.

28.     In fact, BASHEBA CHANDLER-MYERS as personal representative of the ESTATE OF NORMAN BANKS, JR, and as the mother and Natural Guardian of ISAAC LEE, testified that she did not even see any concession stands near them and was not even aware of the fact that there were concessionaires nearby.

29.     According to their testimony, none of the adult members of the BANKS GROUP ever spoke to any employee working for the BOUCHER BROTHERS, or to any employee of any other vendor or concessionaire working on the beach that day.

7

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida  33131
Telephone:  (305) 530-0800; Facsimile:  (305) 530-0801

11O354202

30. Rufus Nathaniel Myers claims to have approached a white stand where he thought that umbrellas could be rented, but he never actually spoke with, or even saw anyone at the stand. After a few minutes of waiting at the stand he walked away.

31. At some point during the late afternoon of April 19, 2003, after asking permission of his mother, NORMAN BANKS, JR, and his minor brother, ISAAC LEE, decided to go for one last swim with their (3) three friends.

32. It was shortly thereafter that some of the children from the BANKS GROUP were caught in rip currents, necessitating lifesaving measures by CITY OF MIAMI BEACH lifeguards, and others in the vicinity, including employees of the Jet Ski concessionaire located at the Setai Hotel.

33. The lifeguards, with the help of employees of the Setai Hotel and its concessionaire, Jet Ski Garage, were able to save most of the children from the BANKS GROUP, but NORMAN BANKS, JR suffered significant drowning related injuries and died a few days later in the hospital on April 23, 2003.

34. Even with the assistance of several lifeguards and employees of the Setai and Jet Ski Garage, it took at least 10 minutes, and perhaps as long as 30 minutes or more to locate NORMAN BANKS, JR in the murky water.

8

11O354202

35.     According to Miami Beach Police and EMS reports, NORMAN BANKS, JR's body was found in the water what was subjectively considered to be around the 18th or 19th street location.[1]

36.     At this area of the CITY OF MIAMI BEACH, there is no "19th" street going east of Collins Avenue, only an 18th and 20th street.  Because of the curvature of Collins Avenue between 18th and 20th Streets, coupled with the tights grouping of hotels in this area, 19th Street dead-ends when it intersects with Collins Avenue, and does not continue through to where the beach begins, as is the case with 18th and 20th Streets.

37.     Moreover, because of the curvature of Collins Avenue at the 19th Street area, it is impossible to ascertain, when viewing the hotels from the "mean high water line" (or more simply put the area where the ocean meets the sand of the beach i.e., the shoreline), where the 18th, 19th, or 20th street equivalent is when looking toward the back of the various hotels located in this area, as identified in paragraphs 43 and 44 below.

38.     Regardless of where NORMAN BANKS, JR's body was found in the water, in relation to where the actual onset of the drowning event occurred, it is undisputed that his mother, and personal representative, BASHEBA CHANDLER-MYERS, chose to sit approximately 30 feet away from the 21st lifeguard stand because she felt comfortable sitting next to the lifeguards.

---

[1]  City of Miami Beach streets do not extend to the shoreline of "mean high water line", but instead, the nearest "street" to where NORMAN BANKS' body was found would be over 100 yards away.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone:  (305) 530-0800; Facsimile:  (305) 530-0801

110354202

## THE VARIOUS VENDORS AND CONCESSIONAIRES WORKING ON MIAMI BEACH ON APRIL 19, 2003, BEHIND 18TH THROUGH 21ST STREETS

39.     On April 19, 2003, there were several vendors and/or concessionaires working on the beach between 18th and 21st street, renting umbrellas and loungers, selling food and beverages, and renting equipment such as Jet Skis.

40.     The specific identity of most of those vendors working on April 19, 2003, with the exception of "The Setai" and "Jet Ski Garage", is unknown to the Plaintiff as of the date of this filing, although this information has been requested from the CITY OF MIAMI BEACH.[2]

41.     The CITY OF MIAMI BEACH is in the best position to provide this information since the vendors and concessionaires working on the beach on the date of the incident (or their sponsor hotels), were required to obtain licenses from the CITY in order to operate.

42.     Notwithstanding the allegations contained in paragraphs 40 and 41 herein, upon information and belief, Plaintiff believes that the following vendors/concessionaires, and perhaps others, may have been working on that beach between 18th and 21st streets: Pedro and Dawn Becerra, Daniel and Mirta Ruiz, Portofino Beach Club, Inc., Tim Wilcox, Jet Ski Garage, M&M Concessions, the Days Inn (located at 100 21st Street), the Setai Hotel (located at 2001 or 2009 Collins Avenue), the Shore Club (located at 1901 Collins Avenue), the Riande Continental Hotel (located at 1825 Collins Avenue), the Shelborne Hotel (located at 1801 Collins Avenue), the Raleigh Hotel (located at 1775 Collins Avenue), South Seas Hotel (located at 1751 Collins Avenue), and the Marseilles Hotel (located at 1741 Collins Avenue).

---

[2] To date, the CITY OF MIAMI BEACH and the City Attorney's Office have failed to comply with GENESIS' public records request for this information.

10

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

43.    Between 18th and 21st Street on Miami Beach, there were at least 8 hotels that did, or may have, employed vendors/concessionaires on the beach, including, but not limited to: the Days Inn (located at 100 21st Street), the Setai (located at 2001 or 2009 Collins Avenue), the Shore Club (located at 1901 Collins Avenue), the Riande Continental (located at 1825 Collins Avenue), the Shelborne (located at 1801 Collins Avenue), the Raleigh Hotel (located at 1775 Collins Avenue), South Seas Hotel (located at 1751 Collins Avenue), and the Marseilles Hotel (located at 1741 Collins Avenue).

## THE OPERATIONS OF BOUCHER BROTHERS, BOTH INDEPENDENTLY, AND ON BEHALF OF THE CITY OF MIAMI BEACH

44.    On April 19, 2003, BOUCHER BROTHERS were engaged in the business of operating beach concessions, including most significantly, the rental of loungers and umbrellas at various locations along Miami Beach, on behalf of both the CITY and separately, on behalf of several area hotels.

45.    BOUCHER BROTHERS would typically contract with a particular hotel on the beach for those concessions, and the hotel, as the upland owner from the beach, would procure the necessary license from, and enter into a separate and distinct concessionaire agreement with, the CITY in order to legally operate said concessions.

46.    In addition to its independent business dealing with various hotels, on April 19, 2003, BOUCHER BROTHERS and the CITY OF MIAMI BEACH   had in effect a "BEACHFRONT CONCESSION AGREEMENT", approved by the Mayor and City Commission, whereby the CITY and BOUCHER BROTHERS would share revenue from food,

11

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida  33131
Telephone:  (305) 530-0800; Facsimile:  (305) 530-0801

11O354202

beverage, and equipment rental concessions from (3) three specifically identified areas on Miami Beach where there was no upland owner, such as a hotel which was entitled to hire and select their own concessionaire without input from the CITY.

47.     The only (3) three areas of Miami Beach within the purview of the BEACHFRONT CONCESSION AGREEMENT were: Lummus Park (from 5th through 14th streets), Ocean Terrace (located from 72nd to 75th streets), and North Shore Open Space Park (located from 79th to 85th streets).

48.     The BEACHFRONT CONCESSION AGREEMENT required BOUCHER BROTHERS to procure insurance naming the CITY OF MIAMI BEACH as an additional insured with respect to BOUCHER BROTHERS activities under the BEACHFRONT CONCESSION AGREEMENT.

49.     Pursuant to the BEACHFRONT CONCESSION AGREEMENT, BOUCHER BROTHERS did in fact procure insurance from GENESIS naming the CITY OF MIAMI BEACH as an additional insured, but only for the specific locations identified and contemplated in the BEACHFRONT CONCESSION AGREEMENT. (See Composite Ex. "A", GI-101).

50.     On April 19, 2003, BOUCHER BROTHERS was not working in the area of 18th to 21st Street beach pursuant to the BEACHFRONT CONCESSION AGREEMENT with the CITY OF MIAMI BEACH, or any other agreement with the CITY.

51.     The BANKS GROUP was not located within the close proximity of any of the (3) areas of Miami Beach contemplated by the BEACHFRONT CONCESSION AGREEMENT, i.e., Lummus Park (from 5th through 14th streets), Ocean Terrace (located from 72nd to 75th streets),

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

and North Shore Open Space Park (located from 79th to 85th streets) at the time of the drowning event which caused NORMAN BANKS JR's death.

## ALLEGATIONS OF THE UNDERLYING COMPLAINT IN ESTATE OF NORMAN BANKS, JR., ET AL. v. CITY OF MIAMI BEACH

52.     On or about April 13, 2007, BASHEBA CHANDLER-MYERS as personal representative of the ESTATE OF NORMAN BANKS, JR, and as the mother and natural Guardian of ISAAC LEE, brought a wrongful death and negligence action, respectively, in Miami-Dade County Circuit Court against the CITY OF MIAMI BEACH. (See: Composite Ex. "B", "The Banks Complaint")

53.     Neither BOUCHER BROTHERS, or any other individual, hotel, or entity, were ever named as defendants in The Banks Complaint.

54.     The Banks Complaint also does not allege that any other entity, aside from the CITY OF MIAMI BEACH, was in any way negligent or responsible for the death or injury alleged in the Complaint.

55.     The Banks Complaint is clear in that it is alleging a claim for the wrongful death of NORMAN BANKS, JR. under Chapter 768, Florida Statutes.

56.     However the claim asserted by his brother, ISAAC LEE is vague and ambiguous as to whether LEE is alleging that he suffered his own personal, permanent injuries in the drowning event, or if he is alleging injuries as a bystander who witnessed the drowning of his brother.

57.     In pertinent part, The Banks Complaint alleges the following::

13

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

"13.    At all times material hereto, the Defendant, MIAMI BEACH, owed the following duties to NORMAN BANKS, JR., ISAAC LEE and other members of the public who used the beach and/or ocean in the area of the 1900 block of the Street[3]:

A.    To operate a designated water recreation area in a reasonably safe manner.

B.    To have a lifeguard station in an area where the public was invited and attracted to use the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains, and parking, along with the operation of concessions renting beach lounges, chairs, watercraft and/or other water recreation equipment.

C.    To have adequate, trained lifeguards present to protect users of the beach and/or ocean in an area where the public was invited and attracted to use the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains, and parking, along with the operation of concessions renting beach lounges, chairs, watercraft and/or other water recreation equipment.

D.    To have a warning system for rip currents and/or other dangerous surf conditions by the use of warning signs, warning flags, condition boards, or other warning means.

E.    To have available on the beach, safety equipment such as throw bags with attached lines, life preservers and/or a dedicated emergency telephone line.

F.    To have their roving lifeguards adequately protect users of the beach and ocean in areas not proximate to lifeguard stations.

G.    In the alternative, to post warnings that the beach was unguarded and that swimmers should proceed north to the 2100 block of the Street, where lifeguards were suppose to be present, before entering the ocean.

14.    The Defendant, MIAMI BEACH, breached its duties owed to NORMAN BANKS, JR. and ISAAC LEE in the following respects:

A.    Failed to operate a designated water recreation area in a reasonably safe manner.

---

[3] The language from sub-paragraphs B and C of paragraphs 13 and 14 is taken almost *verbatim* from the Florida Supreme Court's decision in *Breaux v. City of Miami Beach*, 899 So. 2d 1059, 1061 (Fla. 2005)

14

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

B.   Failed to have a lifeguard station in an area where the public was invited and attracted to use the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains, and parking, along with the operation of concessions renting beach lounges, chairs, watercraft and/or other water recreation equipment.

C.   Failed to have adequate, trained lifeguards present to protect users of the beach and/or ocean in an area where the public was invited and attracted to use the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains, and parking, along with the operation of concessions renting beach lounges, chairs, watercraft and/or other water recreation equipment.

D.   Failed to have a warning system for rip currents and/or other dangerous surf conditions by the use of warning signs, warning flags, condition boards, or other warning means.

E.   Failed to have available on the beach safety equipment such as throw bags with attached lines, life preservers and/or a dedicated emergency telephone line.

F.   Failed to have their roving lifeguards adequately protect users of the beach and ocean in areas not proximate to lifeguard stations.

G.   In the alternative, failed to post warnings that the beach was unguarded and that swimmers should proceed north to the 2100 block of the Street, where lifeguards were present, before entering the ocean.

15.   As a direct and proximate result of the negligence of the Defendant, MIAMI BEACH, NORMAN BANKS, JR. died on April 23, 2003 and ISAAC LEE suffered personal injury on April 19, 2003, which injuries continue to this day.

16.   As a direct and proximate result of the negligence of the Defendant, MIAMI BEACH, as aforesaid, BASHEBA CHANDLER-MYERS, as surviving Mother of NORMAN BANKS, JR., and as Mother of ISAAC LEE, has sustained the following damages:

A.   She has in the past and will in the future suffer great mental pain and suffering.

B.   She has in the past and will in the future suffer the loss of the companionship and protection of her son, NORMAN BANKS, JR..

15

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

C.     She has in the past and will in the future be deprived of the lost support and services of her son, NORMAN BANKS, JR.

D.     Medical and funeral expenses which she has paid for and on behalf of her son, NORMAN BANKS, JR.

E.     Medical expenses which she has paid for and on behalf of her son, ISAAC LEE.

18.    That as a direct and proximate result of the negligence of the Defendant, MIAMI BEACH, as aforesaid, The Estate of NORMAN BANKS, JR. has sustained the following damages:

A.     Loss of the prospective net accumulations of The Estate.

B.     Medical and funeral expenses that have become a charge against The Estate or that were paid on behalf of NORMAN BANKS, JR.

19.    As a direct and proximate result of the negligence of Defendant MIAMI BEACH, the Plaintiff ISAAC LEE has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical treatment and care, loss of earnings, loss of the ability to earn money, and aggravation of a preexisting condition.  These losses are permanent or continuing in nature and ISAAC LEE will suffer them in the future. BASHEBA CHANDLER-MYERS, as parent and natural guardian of ISAAC LEE, has suffered expenses of hospitalization, medical treatment and care and loss of support, services companionship and protection.

## THE CITY OF MIAMI BEACH'S REQUEST FOR INDEMNITY AND DEFENSE PURSUANT TO THE BOUCHER BROTHERS CONTRACT OF INSURANCE WITH GENESIS AND PURSUANT TO THE LEGAL DECISIONS IN THE *MONTICELLO, BREAUX* AND *POLEYEFF* CASES

58.    In July 2009, the CITY OF MIAMI BEACH for the first time demanded that

GENESIS provide a defense and indemnity based on a recent decision of this Court in

*Monticello Insurance Company v. City of Miami Beach, Estate of Poleyeff, and Estate of Breaux,*

16

11O354202

Case No.: 06-20459–CV-GOLD.  The CITY later supplemented and repeated this request on or about August 28, 2009.  (See Composite Ex. "C").

59.      In *Monticello*, the concessionaire vendor, Hurricane Beach Rentals (which was also a named defendant in the underlying *Breaux* and *Poleyeff* litigation), was working on behalf of the CITY OF MIAMI BEACH pursuant to a concessionaire agreement with the CITY in the area where Breaux and Poleyeff drowned, and had rented the Breaux and Poleyeff families lounge chairs the day before, and the day of, the drowning.

60.      In the *Breaux* and *Poleyeff* cases, the families were sitting on lounge chairs in the designated Hurricane Beach Rentals area ("HBR"), which was found to have been a part of the "public swimming area" created by the CITY both on the day before, and the day of the drownings.

61.      In *Monticello* and the underlying *Breaux* and *Poleyeff* cases, there is no indication whatsoever that there were any other vendors working in the "public swimming area" created by the operations of the CITY OF MIAMI BEACH.  See: *Breaux v. City of Miami Beach*, 899 So. 2d 1059, 1061 (Fla. 2005)

62.      In the *Breaux* and *Poleyeff* cases, the Third District, and later in its affirmance, the Florida Supreme Court, found that, although HBR owed no legal duty to Breaux or Poleyeff, the CITY OF MIAMI BEACH did, because it had created a "public swimming area"-an operational activity for sovereign immunity purposes.

63.      In *Monticello*, the CITY, as in the instant case, asked the insurance carrier for HBR to provide a defense and indemnity under the additional insured endorsement of the Monticello policy.

17

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone:  (305) 530-0800; Facsimile:  (305) 530-0801

11O354202

64.     Monticello refused to provide a defense, and ultimately, because of the outright refusal of Monticello to defend, the CITY entered into a "Coblentz" agreement with Breaux and Poleyeff well in excess of $5,000,000.

65.     This Court ultimately found that *Monticello* owed additional insured coverage to the CITY under the circumstances of that case, after determining: 1) that the endorsement at issue was ambiguous as to whose negligence was insured (i.e. the own negligence of the additional insured, the CITY, or the additional insured for the vicarious liability caused by the negligence of the named insured, Hurricane Beach), and 2) that the named insured, HBR's operations as performed for the CITY "per its concession agreement" in the area where Breaux and Poleyeff drowned, demonstrated the "requisite causal connection" between Hurricane Beach's operations and the CITY'S liability.

66.     In finding that the requisite casual connection existed, this Court distinguished between a "remote connection" which the Court found "would not suffice". The Court's decision in *Monticello* was not appealed. See: attached Composite Ex. "D", D.E. 198, Opinion from *Monticello Insurance Company v. City of Miami Beach, Estate of Poleyeff, and Estate of Breaux*, Case No.: 06-20459–CV-GOLD.

67.     The CITY's July and August, 2009, tender requests to GENESIS were based on *Monticello*, and the CITY's representation that the same operative facts were at issue in the underlying BANKS litigation. (See: Ex. "C").

68.     The CITY stated in its correspondence of August 28, 2009 (at page 3) that GENESIS' insured, BOUCHER BROTHERS, was the concessionaire operating a concession stand on April 19, 2003 at the area where the BANKS PARTY was located on the beach. This

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

statement was false when made. In fact, the CITY knew, or in the exercise of due diligence should have known, that other vendors and concessionaires were working in the relevant area at the time, and in fact some of those vendors actually assisted the CITY in the rescue to find the decedent (NORMAN BANKS, JR), and rescue his brother (ISAAC LEE).

69.    Additionally, at the time of its tender requests, the CITY knew, or in the exercise of due diligence should have known, that the BANKS GROUP was not sitting in an area controlled by any vendor or concessionaire, but rather was sitting in an area controlled exclusively by the CITY OF MIAMI BEACH, (i.e., between the 21st and 22nd Street beach), in an area known as "Collins Park". The CITY failed to convey this information to GENESIS in its tender requests.

70.    Ultimately, on September 3, 2009, after reviewing the CITY's request and the Federal Court's decision in *Monticello*, and with the good faith belief that the factual representations from the CITY were accurate and complete, GENESIS accepted the CITY'S tender under a reservation of rights to later deny coverage. (See attached Composite Ex. "E").

71.    Subsequent to the tender of the claim to GENESIS and its appointed defense counsel, Alan Rosenberg, Esq., the Senior City Assistant Attorney, Emomotimi S. Brisibe has remained actively involved in the litigation and remains on the certificate of service for all filings.

19

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

## THERE IS NO COVERAGE AVAILABLE TO THE CITY UNDER THE BOUCHER BROTHERS POLICY ISSUED BY GENESIS

72.     The CITY OF MIAMI BEACH is not an insured under the Policy for the claims contained in the Banks Complaint including the wrongful death claim of the ESTATE OF NORMAN BANKS, JR, and the negligence claim of ISAAC LEE both under the terms, conditions, exclusions and endorsements of the policy and because the CITY faces no liability arising from the operations of BOUCHER BROTHERS under the terms of the AI Endorsement to the Policy. *See* Exhibit "A".

73.     There is no coverage (defense or indemnity) available to the CITY under the Policy because the underlying facts demonstrate that BOUCHER BROTHERS was not performing any work pursuant to any contract that it had with the CITY OF MIAMI BEACH at or near the location of the BANKS PARTY on the beach on April 19, 2003.

74.     Further, there is no coverage (defense or indemnity) available to the CITY under the Policy because the Policy does not provide coverage for the CITY OF MIAMI BEACH as an additional insured for operations or conduct which is wholly unrelated to the operations of BOUCHER BROTHERS.

75.     Further, there is no coverage (defense or indemnity) available to the CITY under the Policy of insurance because the claims against the CITY contained in the Banks Complaint do not arise out of BOUCHER BROTHERS' operations or any premises rented to BOUCHER BROTHERS by the City.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

76.    Further, there is no coverage (defense or indemnity) available to the CITY under the Policy because the bodily injury alleged in the Banks Complaint does not arise out of operations performed for the CITY OF MIAMI BEACH.

77.    Further, there is no coverage (defense or indemnity) available to the CITY under the Policy because the policy does not cover the additional insured's direct negligence whereas here, the underlying Plaintiff's injury does not have a sufficient causal connection to the operations of BOUCHER BROTHERS.

78.    Further, there is no coverage (defense or indemnity) available to the CITY under the Policy because there is not even a "remote" connection between NORMAN BANKS, JR.'s death, and ISAAC LEE's alleged injuries, and the operations of BOUCHER BROTHERS.

79.    Further, there is no coverage (defense or indemnity) available to the CITY under the Policy because, although the City may have been operating a "public swimming area" as construed pursuant to Florida law between the areas of 18th through 21st Street, any such operation was not "largely based upon the operations" of BOUCHER BROTHERS, but, was, at best, based upon the operations of numerous hotels and concessionaires working in the area on April 19, 2003.

80.    Further, there is no coverage (defense or indemnity) available to the CITY under the Policy because there is no causal connection, whatsoever, between the beach chair/umbrella operations of BOUCHER BROTHERS and the death of NORMAN BANKS, JR. and purported injuries of ISAAC LEE and the legal duty of care owed by the City to NORMAN BANKS, JR. and ISAAC LEE.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, One Biscayne Tower Suite 3050, Miami, Florida 33131
Telephone: (305) 530-0800; Facsimile: (305) 530-0801

11O354202

81.    Further, there is no coverage (defense or indemnity) available to the CITY under the Policy because no member of the BANKS GROUP was a client or customer of BOUCHER BROTHERS, had any contact with BOUCHER BROTHERS, and did not locate themselves at the 21st Street beach that day due to the operations of BOUCHER BROTHERS.

82.    Further, there is no coverage (defense or indemnity) available to the CITY under the Policy because the BANKS GROUP located themselves within an area solely owned, controlled and operated by the CITY OF MIAMI BEACH.

83.    In view of the foregoing, GENESIS is uncertain as to its legal rights, duties, and obligations under the provisions of the policy of insurance.

84.    Pursuant to the terms, conditions, limitations, and exclusions in the policy, GENESIS seeks a declaratory judgment that it has no obligations of defense or indemnity under the Policy to the CITY OF MIAMI BEACH with respect to the Banks Complaint or any of the claims contained therein.

85.    GENESIS does not have an adequate remedy at law.

86.    In view of the foregoing, a *bona fide*, actual and present case or controversy exists among the parties, and this Court has the power to declare the rights and liabilities of the parties pursuant to 28 U.S.C. § 2201, 2202, et seq.

WHEREFORE, the Plaintiff, GENESIS Indemnity Insurance Company, respectfully requests this Court to:

a.    take jurisdiction of this matter to determine and adjudicate the rights and liabilities of the parties with respect to the Policy;

22

11O354202

b. declare that the CITY OF MIAMI BEACH is not an additional insured under the Policy with respect to the Banks Complaint and the claims contained therein;

c. declare that GENESIS has neither the duty to defend nor the duty to indemnify the CITY OF MIAMI BEACH with respect to the claims of the ESTATE OF NORMAN BANKS, JR, and ISAAC LEE; and

d. in the alternative declare that the claims of both the ESTATE OF NORMAN BANKS, JR, and ISAAC LEE arise out of one occurrence as defined by the policy;

e. grant GENESIS any and all further relief that this Court deems just and proper.

Dated: March 29, 2010

**KAPLAN ZEENA LLP**
*Attorneys for Genesis Indemnity Insurance Company*
JAMES M. KAPLAN
Florida Bar No.: 921040
MICHAEL A. SASTRE
Florida Bar No.: 0070335
One Biscayne Tower, Suite 3050
2 South Biscayne Blvd.
Miami, Florida 33131
Tel:      (305) 530-0800
Fax:     (305) 530-0801

23

11O354202

GENESIS INDEMNITY INSURANCE COMPANY
695 E. MAIN STREET
STAMFORD, CONN  06904

NON-ASSESSABLE
PERSONAL WATERCRAFT
NEW

CERTIFIED COPY
This is to certify that this is a
true and exact copy of policy
no: ZYB008426
by: GARY STARRETT

NAME INSURED:
BOUCHER BROS. MGMT, INC. AND
BOUCHER BROS. MIAMI BEACH, LLC
DBA BOUCHER BROTHERS
20971 NE 30TH COURT
AVENTURA, FL. 33180

COMPANY SERVICE OFFICE
(303)425-5950
09-04-511 AGENT
HULL & COMPANY, INC.
(954)527-4855

POLICY NUMBER:  ZYB008426

POLICY PERIOD: 12:01 A.M. STANDARD TIME,
AT THE INSURED PREMISES.
FROM  05/31/2002 TO 05/31/2003
AMENDED EFFECTIVE: 05/31/2002
PREMIUM CHANGE TO EXPIRATION DATE $  69,275
FEE    3,464
------------
72,739

INSURANCE IS PROVIDED ONLY FOR THOSE COVERAGES FOR WHICH A SPECIFIC AMOUNT OF
INSURANCE IS INDICATED. WE WILL PROVIDE THE INSURANCE DESCRIBED IN THIS POLICY
IN RETURN FOR THE PREMIUM AND COMPLIANCE WITH ALL APPLICABLE POLICY PROVISIONS.

POLICY DESCRIPTION:
LOCATIONS: REF. TO GI-101
10110 - BOATS - CANOES OR ROWBOATS-FOR RENT-NOT EQUIPPED WITH MOTORS
        & KAYAKS
10119 - BOATS - NOC - RENTED TO OTHERS
10133 - BEACH CHAIRS AND UMBRELLAS - RENTED TO OTHERS
49950 - ADDITIONAL INSUREDS

| COVERAGE DESCRIPTION | LIMIT | PREMIUM | DEDUCTIBLE |
|---|---|---|---|
| EACH OCCURRENCE | 1,000,000 | 69,275 | 1,000 |
| GENERAL AGGREGATE | 2,000,000 | | |
| PRODUCTS/COMPLETED OPNS | 2,000,000 | | |
| PERSONAL & ADV. INJURY | 1,000,000 | | |
| MEDICAL PAYMENTS | | | |
| DMG-PREMISE RENTED TO YOU | | | |

SUBJECT TO FOLLOWING FORMS AND ENDORSEMENTS:
  CG00/57 09/99  CG21/39 10/93  CG21/47 07/98  CG21/50 09/89  CG24/02 11/94
  CG24/12 11/85  GI-105  01/97  GI-108C 01/97  GI-113  01/97  GI-114  01/97
  GI-145  01/97  GI-146  01/97  GI-147  01/97  GI-148  01/97  IL00/17 11/85
  IL00/21 11/94  CG21/49 09/99  GI-186  01/01  CG00/01 10/01  CG21/36 01/96
  CG21/69 01/02  CG21/35 10/01  CG21/45 07/98  CG03/00 01/96  GI-151A 03/97
  CG21/46 07/98  GI-101  01/97  CG20/11 11/85  CG20/12 07/98  CG20/26 11/85

SERVICE COMPANY: COLORADO WESTERN INSURANCE COMPANY          PREMIUM: 69,275

DATE OF ISSUE: 05/30/2002          COUNTERSIGNED: _____
                                    AUTHORIZED REPRESENTATIVE

05/30/02  15:06:33



EXHIBIT
A

GENESIS INDEMNITY INSURANCE COMPANY
STAMFORD, CONN  06904

COMMERCIAL GENERAL LIABILITY COVERAGE PART
SUPPLEMENTAL DECLARATIONS

NAME INSURED:
BOUCHER BROS. MGMT, INC. AND
BOUCHER BROS. MIAMI BEACH, LLC

COMPANY SERVICE OFFICE
(303)425-5950
09-04-511 AGENT
HULL & COMPANY, INC.
(954)527-4855

POLICY NUMBER:  ZYB008426

POLICY PERIOD: 12:01 A.M. STANDARD TIME,
AT THE INSURED PREMISES.
FROM  05/31/2002 TO 05/31/2003
AMENDED EFFECTIVE: 05/31/2002

FORM OF BUSINESS : LIMITED LIABILITY COMPANY

-------------------------------------------------------------------

| PREMIUM CLASS | BASIS | | | RATE | PREMIUM |
|---|---|---|---|---|---|
| 10110 | GROSS SALES | 5,000 | PREM/OP | 55.000 | 275 |
| | | | ALL OTHER | INCL | ICL |
| 10119 | GROSS SALES | 500,000 | PREM/OP | 55.000 | 27,500 |
| | | | ALL OTHER | INCL | INCL |
| 10133 / 16722 | GROSS SALES | 2,000,000 | PREM/OP | 20.000 | 40,000 |
| | | | ALL OTHER | INCL | INCL |
| 49950 | OTHER | 15 | PREM/OP | 100.000 | 1,500 |
| | | | ALL OTHER | | |

TOTAL PREMIUM    69,275

-------------------------------------------------------------------
THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS,
TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS
COMPLETE THE ABOVE NUMBERED POLICY.

CW-101 SD (6/94)

DECLARATIONS - CONTINUED

ZYB00842                                                05/31/02 TO 05/31/03
BOUCHER BROS. MGMT, INC. AND
BOUCHER BROS. MIAMI BEACH, LLC

MORTGAGE CLAUSE: IF A MORTGAGEE IS NAMED IN THIS POLICY, WE
WILL CONTINUE THIS INSURANCE FOR THE MORTGAGEE'S INTEREST FOR
TEN DAYS AFTER WRITTEN NOTICE OF TERMINATION TO THE MORTGAGEE
AND THEN THIS POLICY WILL TERMINATE.

01 ADDITIONAL INSURED

THE CITY OF MIAMI BEACH
1700 CONVENTION CENTER DR.
MIAMI BEACH, FL. 33139

02 ADDITIONAL INSURED

THE RITZ PLAZA HOTEL
1701 COLLINS AVE.
MIAMI BEACH, FL. 33139

03 ADDITIONAL INSURED

CITY OF FT. LAUDERDALE
100 N. ANDREWS AVE. ROOM 619
PURCHASING DEPT.
FT. LAUDERDALE, FL. 33301

04 ADDITIONAL INSURED

HILTON HOTELS CORP. AS AGENTS FOR
HOTELERAMA ASSOC.LTD,   DBA THE          FONTAINEBLEAU HILTON RESORT &
4441 COLLINS AVE.                        TOWERS & HOTELERAMA ASSOC.LTD
MIAMI BEACH, FL. 33140                   THE FONT. HIL. RESORT & TOWERS

05 ADDITIONAL INSURED

HOLIDAY INN SOUTH BEACH
2201 COLLINS AVE.
MIAMI BEACH, FL. 33139

05/30/02  15:06:33

DECLARATIONS - CONTINUED

ZYB00842                                    05/31/02 TO 05/31/03
BOUCHER BROS. MGMT, INC. AND
BOUCHER BROS. MIAMI BEACH, LLC

MORTGAGE CLAUSE: IF A MORTGAGEE IS NAMED IN THIS POLICY, WE
WILL CONTINUE THIS INSURANCE FOR THE MORTGAGEE'S INTEREST FOR
TEN DAYS AFTER WRITTEN NOTICE OF TERMINATION TO THE MORTGAGEE
AND THEN THIS POLICY WILL TERMINATE.

06 ADDITIONAL INSURED

HELLO FLORIDA
324 WEST GORE ST.
ORLANDO, FL. 32808

07 ADDITIONAL INSURED

THE DOUBLETREE SURFCOMBER HOTEL
1717 COLLINS AVE.
MIAMI BEACH, FL. 33139

08 ADDITIONAL INSURED

EMBASSY SUITES DIONT OPERATION
950 SOUTHWEST 20TH AVE.
DEERFIELD BEACH, FL. 33441

09 ADDITIONAL INSURED

THE DELANO HOTEL
1685 COLLINS AVE.
MIAMI BEACH, FL. 33139

10 ADDITIONAL INSURED

THE MARRIOTT SOUTH BEACH
161 OCEAN DR.
MIAMI BEACH, FL. 33139

05/30/02  15:06:33

DECLARATIONS - CONTINUED

ZYB00842                                    05/31/02 TO 05/31/03
BOUCHER BROS. MGMT, INC. AND
BOUCHER BROS. MIAMI BEACH, LLC

MORTGAGE CLAUSE: IF A MORTGAGEE IS NAMED IN THIS POLICY, WE
WILL CONTINUE THIS INSURANCE FOR THE MORTGAGEE'S INTEREST FOR
TEN DAYS AFTER WRITTEN NOTICE OF TERMINATION TO THE MORTGAGEE
AND THEN THIS POLICY WILL TERMINATE.

11 ADDITIONAL INSURED

   CITY OF DEERFIELD
   150 NORTHEAST 2ND AVE.
   DEERFIELD BEACH, FL. 33441


12 ADDITIONAL INSURED

   TURNBERRY ISLE RESORT & CLUB
   18501 COLLINS AVE.
   SUNNY ISLES BEACH, FL. 33160


13 ADDITIONAL INSURED

   THE LOEWS HOTEL
   1601 COLLINS AVE.
   MIAMI BEACH, FL. 33139


14 ADDITIONAL INSURED

   THE CROWN PLAZA HOTEL
   C/O RISK MGMT. DEPT.
   3 RAVENA DR. STE-2900
   ATLANTA, GA. 30346


15 ADDITIONAL INSURED

   FL. FISH & WILDLIFE CONSER. COMM.
   THE BOATING SAFETY SECTION
   620 S. MERIDAN ST.
   TALLAHASSEE, FL. 32399

DECLARATIONS - CONTINUED

ZYB00842                                    05/31/02 TO 05/31/03
BOUCHER BROS. MGMT, INC. AND
BOUCHER BROS. MIAMI BEACH, LLC

MORTGAGE CLAUSE: IF A MORTGAGEE IS NAMED IN THIS POLICY, WE
WILL CONTINUE THIS INSURANCE FOR THE MORTGAGEE'S INTEREST FOR
TEN DAYS AFTER WRITTEN NOTICE OF TERMINATION TO THE MORTGAGEE
AND THEN THIS POLICY WILL TERMINATE.

16 ADDITIONAL INSURED

SAGAMORE HOTEL
1671 COLLINS AVE.
MIAMI BEACH, FL. 33139

17 ADDITIONAL INSURED

RONEY PALACE
2399 COLLINS AVE.
MIAMI BEACH, FL. 33139

05/30/02  15:06:33

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. Exclusions

This insurance does not apply to:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

CG 00 01 10 01

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    © ISO Properties, Inc., 2000    CG 00 01 10 01    □

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a "contract" or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

 © ISO Properties, Inc., 2000 CG 00 01 10 01

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

h. **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

---

CG 00 01 10 01 © ISO Properties, Inc., 2000 Page 7 of 16

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc., 2000         CG 00 01 10 01         □

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

© ISO Properties, Inc., 2000

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000   CG 00 01 10 01   □

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

 © ISO Properties, Inc., 2000 CG 00 01 10 01

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

  © ISO Properties, Inc., 2000  CG 00 01 10 01  ☐

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000

b. Includes

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   (2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

CG 00 01 10 01

COMMERCIAL GENERAL LIABILITY
CG 00 57 09 99

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURING AGREEMENT –
# KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **1. Insuring Agreement** of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 Copyright, Insurance Services Office, Inc., 1998

CG 21 39 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:

"Insured contract" means:

a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.  A sidetrack agreement;

c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement.

CG 21 39 10 93            Copyright, Insurance Services Office, Inc., 1992

Hart Forms & Services
Reorder No. 14-4773

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** **Exclusions** of **Section I — Coverage A — Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

   (1) A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.,** **Exclusions** of **Section I — Coverage B — Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

   (1) A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

   c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

     (1) Causing or contributing to the intoxication of any person;

     (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

     (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

   (1) Manufacture, sell or distribute alcoholic beverages;

   (2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

     (a) Requires a license;

     (b) Is for the purpose of financial gain or livelihood; or

   (3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

    Copyright, Insurance Services Office, Inc., 1988

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

 Copyright, Insurance Services Office, Inc., 1994 □

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Watercraft:**

**Additional Premium:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

2. WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

CG 24 12 11 85            Copyright, Insurance Services Office, Inc., 1984, 1992            Page 1 of 1            □

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

### Jet Ski Rental/Waverunner Rental Endorsement

This endorsement forms part of the policy to which it is attached effective on the inception date of the policy.

The following requirements are conditions to coverage under your insurance policy:

1.  A waiver and/or release of liability, provided by you, must be signed by and obtained from all customers. This waiver and/or release of liability will state the rules that must be followed and the risks involved in using the equipment.

2.  Each renter must be instructed in the safe and proper use of the equipment.

3.  No piece of equipment may be used by any person unless it has been inspected prior to rental and is in good working condition.

4.  All technicians, employees, and independent contractors must have proper training (factory training when available) on the use of, the care of, and the maintenance of all equipment.

5.  The minimum age for renters/users is 18 years. Any renter/user under the age of 18 years must have the co-signature of a parent or guardian.

**In your handwriting, write the following on the lines below:** *"I have read and agree to follow the above at all times."*

_____

_____

_____
Date

_____
Your Signature

_____
Your Name and Title (printed or typed)

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

### Asbestos Exclusion

This endorsement forms part of the policy to which it is attached and takes effect on the inception date of the policy.

It is understood and agreed that such insurance as is afforded by this policy does not apply to any and all liability for bodily injury, disease, or illness, including death at any time resulting therefrom, or property damage, for past, present, or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, abatement, replacement, or handling of or exposure to asbestos or products containing asbestos, whether or not the asbestos is or was at any time airborne as a fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion, or found in any form whatsoever.

It is further understood and agreed that this policy will not become excess of any reduced or exhausted underlying aggregate limit of liability or aggregate self-insured retention to the extent such reduction or exhaustion is the result of claims, damage, or loss excluded by this endorsement.

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

## Service of Suit Clause

It is agreed that in the event of the failure of the insurer hereon to pay any amount claimed to be due hereunder, the insurer hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

The above-named are authorized and directed to accept service of process on behalf of the insurer in any such suit, and/or, upon the request of the insured (or reinsured), it or they will enter a general appearance on behalf of the insurer in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States of America which makes provision thereof, the insurer hereon hereby designate the superintendent, commissioner, or director of insurance or other office specified for that purpose in the statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to make such process or a true copy thereof.

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

### Punitive Damages Exclusion

### Liquor Legal Liability
### Commercial General Liability

This endorsement forms a part of the policy to which it is attached, effective on the inception date of the policy.

It is hereby understood and agreed that the Company's obligation to pay for bodily injury, property damage, personal injury, and advertising injury shall not include any damages assessed for punitive and/or exemplary damages.

### All Other terms and conditions remain unchanged.

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

### Occupational, Environmental, and Communicable Disease Exclusion

### Liquor Legal Liability
### Commercial General Liability

This endorsement forms a part of the policy to which it is attached, effective on the inception date of the policy.

In consideration of the premium and notwithstanding anything contained in this policy to the contrary, it is understood and agreed that this policy shall not apply to any bodily injury resulting from any occupational or environmental or communicable disease arising out of the Insured's operations or products and affecting any employee of the Insured or any other third party.

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

### Assault and Battery Endorsement

### Liquor Legal Liability
### Commercial General Liability

This endorsement forms a part of the policy to which it is attached, effective on the inception date of the policy.

In consideration of the premium charged for this insurance, the policy to which this endorsement is attached is amended and modified as follows:

1.  Actions and proceedings to recover damages for bodily injuries or property damage arising from the following are excluded from coverage, and the Company is under no duty to defend or to indemnify an Insured in any action or proceeding alleging such damages as

    a.  assault;

    b.  battery;

    c.  harmful or offensive contact between or among two or more persons;

    d.  apprehension of harmful or offensive contact between or among two or more persons; or

    e.  threats by words or deeds.

2.  Regardless of degree of culpability or intent and without regard to

    a.  whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents, or servants; or by any otherwise on, at, or near premises owned or occupied by the insured; or by any other person;

    b.  the alleged failure of the insured or his officers, employees, agents, or servants in the hiring, supervision, retention, or control of any person, whether or not an officer, agent, or servant of the insured;

    c.  the alleged failure of the insured or his officers, employees, agents, or servants to attempt to prevent, bar, or halt any such conduct.

3.  This exclusion applies as well to any claims made by any other person, firm, or organization asserting rights derived from, or contingent upon, any person asserting a claim excluded under clauses 2.a., b, or c above, specifically excluding from coverage claims for:

    a.  emotional distress or for loss of society, services, consortium, and/or income;

    b.  reimbursement for expenses (including, but not limited to, medical expense, hospital expenses, and wages) paid or incurred by such other person, firm, or organization;

    c.  any obligation to share damages with or repay someone who must pay damages because of the injury.

### All other terms and conditions remain unchanged.

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

### Audit Provision Endorsement

It is hereby understood and agreed that the Company, at its discretion, may audit this policy, or any other policy the Company has issued within a three- (3-) year period as provided in the Common policy Conditions (IL0017), Item C,"Examination of Your Books and Records."

In the event the policy is canceled by the Insured prior to the policy expiration date, no premium will be refunded until the audit is completed.

# Genesis Indemnity Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOLD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

1. Any sums that the insured becomes obligated to pay as damages and the Company shall have no duty to defend any claim or "suit" against the insured seeking damages because of "bodily injury",  "property damage", "personal injury" or "advertising injury" which would not have occurred in whole or part but for the existence of or actual, alleged or threatened, discharge, dispersal, seepage, migration, release or escape of any mold, mildew or fungus, or any materials containing them, at any time.

2. Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or any other person or organization test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any mold, mildew or fungus, or any materials containing them ; or

   (b) Claim or suit by or on behalf of a governmental authority or any other person or organization for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any mold, mildew or fungus, or any materials containing them.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommended changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983



IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
 TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

Copyright, Insurance Services Office, Inc., 1994

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1994

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc.,  1998

COMMERCIAL GENERAL LIABILITY
CG 21 36 01 96

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 4. of WHO IS AN INSURED (Section II) does not apply.

Copyright, Insurance Services Office, Inc., 1994

COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

 © ISO Properties, Inc., 2001

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

War Or Terrorism

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. Exclusion **h.** under Paragraph **2.**, **Exclusions of Section I – Coverage C – Medical Payments** does not apply.

D. The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

 © ISO Properties, Inc., 2001

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Description And Location Of Premises Or Classification:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage C – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

COMMERCIAL GENERAL LIABILITY
CG 21 45 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DAMAGE TO PREMISES RENTED TO YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The last paragraph ("Exclusions **c.** through **n.** do not apply . . . ") of Paragraph **2., Exclusions** under Section I – **Coverage A – Bodily Injury And Property Damage Liability** is deleted.

**B.** The first exception ("Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply . . . ") to Exclusion **j., Damage To Property** of Paragraph **2., Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability** is deleted.

**C.** Paragraph **6.** of **Section III – Limits Of Insurance** is deleted.

**D.** Any reference in the Declarations to "Damage To Premises Rented To You" is deleted.

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER: COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
| --- | --- | --- |
| | PER CLAIM  or  PER OCCURRENCE | |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage," however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

 Copyright, Insurance Services Office, Inc., 1994

2. PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994
CG 03 00 01 96 □

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

## Accelerated Minimum Earned Premium Endorsement (180-day)

This endorsement modifies the conditions relating to premium on the policy. In the event a similar condition is already contained in the policy, the provision of this endorsement shall take precedence over such similar conditions. The minimum earned premium will be determined on a pro rata basis should the policy be canceled by the company. The minimum earned premium will be determined by the following earned premium schedule should the policy be canceled by the insured for any reason.

| Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | .746 | 31 | .621 | 61 | .496 | 91 | .371 | 121 | .246 | 151 | .121 |
| 2 | .742 | 32 | .617 | 62 | .492 | 92 | .367 | 122 | .242 | 152 | .117 |
| 3 | .738 | 33 | .613 | 63 | .488 | 93 | .363 | 123 | .238 | 153 | .113 |
| 4 | .734 | 34 | .609 | 64 | .484 | 94 | .359 | 124 | .234 | 154 | .109 |
| 5 | .729 | 35 | .604 | 65 | .479 | 95 | .354 | 125 | .229 | 155 | .104 |
| 6 | .725 | 36 | .600 | 66 | .475 | 96 | .350 | 126 | .225 | 156 | .100 |
| 7 | .721 | 37 | .596 | 67 | .471 | 97 | .346 | 127 | .221 | 157 | .096 |
| 8 | .717 | 38 | .592 | 68 | .467 | 98 | .342 | 128 | .217 | 158 | .092 |
| 9 | .713 | 39 | .588 | 69 | .463 | 99 | .338 | 129 | .213 | 159 | .088 |
| 10 | .709 | 40 | .584 | 70 | .459 | 100 | .334 | 130 | .209 | 160 | .084 |
| 11 | .704 | 41 | .579 | 71 | .454 | 101 | .329 | 131 | .204 | 161 | .079 |
| 12 | .700 | 42 | .575 | 72 | .450 | 102 | .325 | 132 | .200 | 162 | .075 |
| 13 | .696 | 43 | .571 | 73 | .446 | 103 | .321 | 133 | .196 | 163 | .071 |
| 14 | .692 | 44 | .567 | 74 | .442 | 104 | .317 | 134 | .192 | 164 | .067 |
| 15 | .688 | 45 | .563 | 75 | .438 | 105 | .313 | 135 | .188 | 165 | .063 |
| 16 | .684 | 46 | .559 | 76 | .434 | 106 | .309 | 136 | .184 | 166 | .059 |
| 17 | .679 | 47 | .554 | 77 | .429 | 107 | .304 | 137 | .179 | 167 | .054 |
| 18 | .675 | 48 | .550 | 78 | .425 | 108 | .300 | 138 | .175 | 168 | .050 |
| 19 | .671 | 49 | .546 | 79 | .421 | 109 | .296 | 139 | .171 | 169 | .046 |
| 20 | .667 | 50 | .542 | 80 | .417 | 110 | .292 | 140 | .167 | 170 | .042 |
| 21 | .663 | 51 | .538 | 81 | .413 | 111 | .288 | 141 | .163 | 171 | .038 |
| 22 | .659 | 52 | .534 | 82 | .409 | 112 | .284 | 142 | .159 | 172 | .034 |
| 23 | .654 | 53 | .529 | 83 | .404 | 113 | .279 | 143 | .154 | 173 | .029 |
| 24 | .650 | 54 | .525 | 84 | .400 | 114 | .275 | 144 | .150 | 174 | .025 |
| 25 | .646 | 55 | .521 | 85 | .396 | 115 | .271 | 145 | .146 | 175 | .021 |
| 26 | .642 | 56 | .517 | 86 | .392 | 116 | .267 | 146 | .142 | 176 | .017 |
| 27 | .638 | 57 | .513 | 87 | .388 | 117 | .263 | 147 | .138 | 177 | .013 |
| 28 | .634 | 58 | .509 | 88 | .384 | 118 | .259 | 148 | .134 | 178 | .009 |
| 29 | .629 | 59 | .504 | 89 | .379 | 119 | .254 | 149 | .129 | 179 | .004 |
| 30 | .625 | 60 | .500 | 90 | .375 | 120 | .250 | 150 | .123 | 180 | .000 |

GI-151A (3/97)

COMMERCIAL GENERAL LIABILITY
CG 21 46 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:
   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Reporting to the proper authorities, or failure to so report; or
   e. Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

 Copyright, Insurance Services Office, Inc., 1997

# COLORADO WESTERN INSURANCE COMPANY (CWIC)

Post Office Box 886 • 3895 Upham Street, Suite 100 • Wheat Ridge, Colorado 80034 • (303) 425-5950 • Fax (303) 425-4393

## General Endorsement

It is hereby understood and agreed that the name insured reads: BOUCHER BROS. MGMT, INC. AND BOUCHER BROS. MIAMI BEACH, LLC DBA BOUCHER BROTHERS C/O MICHAEL MILBERG

---

This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown below.

| Must be completed | |
|---|---|
| Endorsement Number | Policy Number |
| | |

| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. | |
|---|---|
| Issued to | Effective Date |
| | |

Countersigned by _____

(Authorized Representative)

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED—MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

1.  Designation of Premises (Part Leased to You):

2.  Name of Person or Organization (Additional Insured):

3.  Additional Premium:

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a tenant in that premises.

2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

CG 20 11 11 85

Copyright. Insurance Services Office. Inc., 1984

C

POLICY NUMBER:                                          COMMERCIAL GENERAL LIABILITY
                                                        CG 20 12 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# STATE OR POLITICAL SUBDIVISIONS – PERMITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| State Or Political Subdivision: |
|---|
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured**  is amended to include as an insured any state or political subdivision shown in the Schedule, subject to the following provisions:

1. This insurance applies only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

2. This insurance does not apply to:

   a. "Bodily injury," "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

   b. "Bodily injury" or "property damage" included within the "products-completed operations hazard".

          Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER:                                                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Name of Person or Organization:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

This endorsement forms a part of the policy to which it is attached and takes effect on the inception date of the policy.

Coverage under this policy is specifically limited to those operations and codes outlined in the declarations of this policy.  This policy excludes coverage for operations not specifically listed and charged for in the coverage part of the policy or policy decription.

GI-105 (Rev. 1/97)

Page 1 of 1

# GENESIS INDEMNITY INSURANCE COMPANY (GIIC)

695 East Main • Stamford, Connecticut 06904

### General Endorsement

It is hereby understood and agreed that the following locations will form a part of the policy.

1.    Delano
      1685 Collins Avenue
      Miami Beach, FL 33139

2.    Fontainebleau Hilton
      4441 Collins Avenue
      Miami Beach, FL  33140

3.    Turnberry Isle
      18501 Collins Avenue
      Sunny Isles, FL  33160

4.    Loews
      1601 Collins Avenue
      Miami Beach, FL 33139

5.    Surfcomber
      1717 Collins Avenue
      Miami Beach, FL 33139

6.    Holiday Inn 22nd Street
      2201 Collins Avenue
      Miami Beach, FL  33139

7.    Marriott South Beach
      161 Ocean Drive
      Miami Beach, FL 33139

8.    Embassy Suites
      950 SE 20th Avenue
      Deerfield Beach, FL  33139

9.    Sagamore Hotel
      1671 Collins Avenue
      Miami Beach, FL 33139

10.   Ritz Plaza
      1701 Collins Avenue
      Miami Beach, FL  33139

11. Roney Palace
    2399 Collins Avenue
    Miami Beach, FL  33139

12. Crowne Plaza
    1345 Collins Avenue
    Miami Beach, FL  33139

13. Lummus Park
    5th Street to 14th Court
    Miami Beach, FL  39139

14. Ocean Terrace Park
    72nd Street to 75th Street
    Miami Beach, FL  33141

15. North Shore Open Space Park
    79th Street to 85th Street
    Miami Beach, FL  33141

This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown below.

| Must be completed | |
| --- | --- |
| Endorsement Number | Policy Number |
|  |  |

| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. | |
| --- | --- |
| Issued to | Effective Date |
|  |  |

Countersigned by _____
(Authorized Representative)

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 07-10800 CA 15

Florida Bar No.: 0037990

BASHEBA CHANDLER-MYERS, as
personal representative of the Estate of
NORMAN JEROME BANKS, JR., and
as parent and natural guardian of ISSAC
LEE, a minor,

     Plaintiff,

v.

CITY OF MIAMI BEACH,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES

     Plaintiff, BASHEBA CHANDLER-MYERS, as personal representative of the Estate of

NORMAN JEROME BANKS, JR., and as parent and natural guardian of ISSAC

LEE, a minor, (the "Plaintiffs") sues the Defendant, CITY OF MIAMI BEACH, ("MIAMI

BEACH") and states:

### JURSIDICTION AND VENUE

    1.     This is an action for damages in excess of $15,000.00.

    2.     Venue is proper in Miami-Dade County, Florida because the accident which is the

subject of this lawsuit occurred in Miami-Dade County, Florida.

### PARTIES

    3.     The Plaintiff, BASHEBA CHANDLER-MYERS, is or will be appointed as the



**EXHIBIT**

**B**

*Chandler-Myers v. City of Miami Beach*
*Page 2*

duly appointed administrator of the estate of her late son, NORMAN JEROME BANKS, JR.,

and is the parent and natural guardian of her son ISSAC LEE.

4.      At all times material hereto and on April 19, 2003, NORMAN BANKS, JR.,

ISSAC LEE and BASHEBA CHANDLER-MYERS were residents and citizens of the State of

Florida. BASHEBA CHANDLER-MYERS and ISSAC LEE presently are residents and citizens

of the State of Florida.

5.      At all times material hereto, MIAMI BEACH was a municipality of the State of

Florida, located in Miami-Dade County, Florida, and was the owner and/or occupier of the main

Beach bathing area in front of the lifeguard station, Miami Beach, Miami-Dade County, Florida.

6.      MIAMI BEACH was placed on proper notice of the Plaintiffs' claims, and denied

the Plaintiffs' claims, pursuant to §768.28, Florida Statutes (2003) and all conditions precedent

to bringing this action against MIAMI BEACH have been satisfied.

7.      This action is brought for personal injury and wrongful death and the potential

beneficiaries of a recovery in this matter include the following:

                A.  The Estate of NORMAN JEROME BANKS, JR.

                B.  BASHEBA CHANDLER MYERS.

                C.  NORMAN JEROME BANKS, SR.

                D.  ISAAC LEE

### CLAIMS FOR NEGLIGENCE PURSUANT TO §768.28

8.      At all times material hereto, the Defendant, MIAMI BEACH, had designated

portions of the beach area of the City of Miami Beach, including the area at and around the 1900

*Chandler-Myers v. City of Miami Beach*
*Page 3*

block of the Street, as a designated water recreation area for the use of the public in swimming,

boating, and undertaking other water recreation activities.

9.     On April 19, 2003, dangerous surf conditions existed, including "rip currents," in

the Atlantic Ocean in areas designated for swimming in the vicinity of the 1900 block of the

Street.  Plaintiffs did not know of the existence or danger of rip currents and did not know of

their dangers.  The rip currents that existed at that time were not visible or obvious hazards to the

untrained observer, such as Plaintiffs, and constituted a trap and/or hidden danger.

10.    On April 19, 2003, Plaintiffs NORMAN JEROME BANKS, JR. and ISSAC LEE

entered the water at the 1900 block of the Street.  ISSAC LEE was overcome by the rip currents,

and, in imminent peril, yelled for help.  Inasmuch as no lifeguard was in the area, NORMAN

JEROME BANKS, JR. prompted by the motive to safe his brothers life, attempted rescue.

ISSAC LEE was saved;  NORMAN JEROME BANKS, JR. was overcome by rip currents, and

drowned.

11.    At all times material hereto, it was reasonably foreseeable to the Defendant,

MIAMI BEACH, based on its advertising the use of the beach and ocean in encouraging tourism;

in providing public restrooms, showers, drinking fountains and parking in the area of the 1900

block of the Street; and in licensing the conduct of on the beach such as renting beach lounges,

chairs, watercraft and/or other water recreation equipment, that members of the public, including

NORMAN BANKS, JR., ISSAC LEE  and others, would make use of the beach and ocean in the

area of the 1900 block of the Street.

12.    At all times material hereto, it was also reasonably foreseeable to the Defendant,

*Chandler-Myers v. City of Miami Beach*
*Page 4*

MIAMI BEACH, that from time to time dangerous rip currents would be present in the ocean in

the area of the 1900 block of the Street, and that persons using the beach and ocean in that area

would be unfamiliar with the identification of rip currents, the dangers of rip currents, and/or

procedures for escaping danger in the presence of rip currents.

13.     At all times material hereto, the Defendant, MIAMI BEACH, owed the following

duties to NORMAN BANKS, JR., ISSAC LEE and other members of the public who used the

beach and/or ocean in the area of the 1900 block of the Street:

A.     To operate a designated water recreation area in a reasonably safe manner.

B.     To have a lifeguard station in an area where the public was invited and
attracted to use the beach and ocean by virtue of the existence of public
restrooms, showers, drinking fountains, and parking, along with the
operation of concessions renting beach lounges, chairs, watercraft and/or
other water recreation equipment.

C.     To have adequate, trained lifeguards present to protect users of the beach
and/or ocean in an area where the public was invited and attracted to use
the beach and ocean by virtue of the existence of public restrooms,
showers, drinking fountains, and parking, along with the operation of
concessions renting beach lounges, chairs, watercraft and/or other water
recreation equipment.

D.     To have a warning system for rip currents and/or other dangerous surf
conditions by the use of warning signs, warning flags, condition boards, or

*Chandler-Myers v. City of Miami Beach*
*Page 5*

other warning means.

E.      To have available on the beach, safety equipment such as throw bags with attached lines, life preservers and/or a dedicated emergency telephone line.

F.      To have their roving lifeguards adequately protect users of the beach and ocean in areas not proximate to lifeguard stations.

G.      In the alternative, to post warnings that the beach was unguarded and that swimmers should proceed north to the 2100 block of the Street, where lifeguards were suppose to be present, before entering the ocean.

14.   The Defendant, MIAMI BEACH, breached it's duties owed to NORMAN BANKS, JR. and ISSAC LEE in the following respects:

A.      Failed to operate a designated water recreation area in a reasonably safe manner.

B.      Failed to have a lifeguard station in an area where the public was invited and attracted to use the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains, and parking, along with the operation of concessions renting beach lounges, chairs, watercraft and/or other water recreation equipment. *policy* ~~*Duties*~~ *(~~manus dy~~)*

C.      Failed to have adequate, trained lifeguards present to protect users of the beach and/or ocean in an area where the public was invited and attracted to use the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains, and parking, along with the operation of *policy Duties*

*Chandler-Myers v. City of Miami Beach*
*Page 6*

concessions renting beach lounges, chairs, watercraft and/or other water

recreation equipment.

D.     Failed to have a warning system for rip currents and/or other dangerous

surf conditions by the use of warning signs, warning flags, condition

boards, or other warning means.

E.     Failed to have available on the beach safety equipment such as throw bags

with attached lines, life preservers and/or a dedicated emergency telephone

line.

F.     Failed to have their roving lifeguards adequately protect useers of the

beach and ocean in areas not proximate to lifeguard stations.

G.     In the alternative, failed to post warnings that the beach was unguarded

and that swimmers should proceed north to the 2100 block of the Street

where lifeguards were present, before entering the ocean.

15.     As a direct and proximate result of the negligence of the Defendant, MIAMI

BEACH, NORMAN BANKS, JR. died on April 23, 2003 and ISSAC LEE suffered personal

injury on April 19, 2003, which injuries continue to this day.

16.     As a direct and proximate result of the negligence of the Defendant, MIAMI

BEACH, as aforesaid, BASHEBA CHANDLER-MYERS, as surviving Mother of NORMAN

BANKS, JR., and as Mother of ISSAC LEE, has sustained the following damages:

A.     She has in the past and will in the future suffer great mental pain and

suffering.

*Chandler-Myers v. City of Miami Beach*
*Page 7*

    B.    She has in the past and will in the future suffer the loss of the

           companionship and protection of her son, NORMAN BANKS, JR..

    C.    She has in the past and will in the future be deprived of the lost support

           and services of her son, NORMAN BANKS, JR..

    D.    Medical and funeral expenses which she has paid for and on behalf of her

           son, NORMAN BANKS, JR.

    E.    Medical expenses which she has paid for and on behalf of her son, ISACC

           LEE.

17.    As a direct and proximate result of the negligence of the Defendant, MIAMI

BEACH, as aforesaid, NORMAN BANKS, SR., as surviving Father of NORMAN BANKS, JR.,

has sustained the following damages:

    A.    He has in the past and will in the future suffer great mental pain and

           suffering.

    B.    He has in the past and will in the future suffer the loss of the

           companionship and protection of his son, NORMAN BANKS, JR..

    C.    He has in the past and will in the future be deprived of the lost support and

           services of his son, NORMAN BANKS, JR..

    D.    Medical and funeral expenses which he has paid for and on behalf of his

           son, NORMAN BANKS, JR.

18.    That as a direct and proximate result of the negligence of the Defendant, MIAMI

BEACH, as aforesaid, The Estate of NORMAN BANKS, JR. has sustained the following

*Chandler-Myers v. City of Miami Beach*
*Page 8*

damages:

A.    Loss of the prospective net accumulations of The Estate.

B.    Medical and funeral expenses that have become a charge against The

Estate or that were paid on behalf of NORMAN BANKS, JR.

19.    As a direct and proximate result of the negligence of Defendant MIAMI BEACH,

the Plaintiff ISSAC LEE has suffered bodily injury and resulting pain and suffering, disability,

disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of

hospitalization, medical treatment and care, loss of earnings, loss of the ability to earn money,

and aggravation of a preexisting condition.  These losses are permanent or continuing in nature

and ISSAC LEE will suffer them in the future.    BASHEBA CHANDLER-MYERS, as parent

and natural guardian of ISSAC LEE, has suffered  expenses of hospitalization, medical treatment

and care and loss of support, services companionship and protection.

WHEREFORE, the Plaintiff, BASHEBA CHANDLER MYERS, as personal

representative of the Estate of NORMAN BANKS, JR. and as parent and natural guardian of

ISACC LEE, demands judgment against the Defendant, MIAMI BEACH, for damages, costs,

interest, and any other relief which this Court may deem appropriate.  The Plaintiffs further

demand trial by jury as to all issues so triable as a matter of right.

*Chandler-Myers v. City of Miami Beach*
*Page 9*

Respectfully Submitted:

FEILER & LEACH, P.L.
Attorneys for Plaintiff
901 Ponce de Leon Blvd., Penthouse
Coral Gables, Florida 33134
(305) 441-8818
(305) 441-8081 fax

By: _____
       MARTIN E. LEACH
       MICHAEL B. FEILER

OFFICE OF THE CITY ATTORNEY

*City of Miami Beach*

F       L       O       R       I       D       A



**JOSE SMITH**
**City Attorney**

**Telephone:**    **(305) 673-7470**
**Facsimile:**    **(305) 673-7002**

*CERTIFIED MAIL NO. 7099 3400 0014 4848 5855*
*RETURN RECEIPT REQUESTED*

July 1, 2009

Combined Underwriters of Miami
8240 N.W. 52nd Terrace, Suite 408
Miami, Florida 33166

RE:   Named Insured:        Boucher Brothers Management, Inc. and
                            Boucher Brothers Miami Beach, LLC d/b/a
                            Boucher Brothers

      Additional Insured:   City of Miami Beach
      Policy No.:           ZYB008426
      Claimant:             Basheba Chandler-Myers, as Personal
                            Representative of the Estate of
                            Norman Jerome Banks, Jr.

      D/A:                  April 19, 2003

Dear Sir/Madam:

Please be advised that this letter will serve as the City of Miami Beach's official demand for coverage from Genesis Indemnity Insurance Company, whom you represent for the above captioned matter. The City requests that you immediately take over the defense for the City of Miami Beach and agree to fully indemnify the City with regard to this claim.

The accident occurred as decedent, Norman Jerome Banks, Jr., entered the beach at the 1900 block and drowned.

The Certificate of Liability Insurance for Genesis indemnity Insurance Co., attached hereto, clearly indicates that the City of Miami Beach is an additional insured under the policy and that Genesis Indemnity Insurance Company has a duty to defend this action on behalf of the City.

**EXHIBIT**
**C**

1700 Convention Center Drive -                    Beach, Florida  33139

*Combined Underwriters of Miami*
*Page Two*
*July 1, 2009*

This lawsuit (a copy of which is attached hereto) was served on the City on April 18, 2007. Accordingly, a response to the complaint (a copy of which is attached hereto) was filed by the City on May 18, 2007, and its amended answer on April 3, 2009. Additionally, on the issue of coverage, we are enclosing the decision handed down from the United States District Court regarding the matter of *Monticello Insurance Company v. CMB, Poleyeff and Breaux* which arose from a similar lawsuit. Under Florida law, inaction and refusal to properly and timely address the issue of coverage may properly result in a claim of bad faith by the City of Miami Beach against Union Temporary Services, Inc. and its insurers.

I would respectfully request, immediately upon receipt of this letter, that you; a) send me a fax at (305) 673-7002, acknowledging receipt of same; b) contact the appropriate person, department, or entity to notify them of this claim; and c) transmit this letter to the appropriate person or department with a request that they contact me within seven (7) days to make the necessary arrangements to defend and fully indemnify the City of Miami Beach in this lawsuit.

If I do not receive a response at that time, I will have no other choice but to file an appropriate claim for bad faith, contribution and any other existing causes of action under Florida law.   At that time, I will also file an action for declaratory relief so the Court may appropriately decide coverage, if necessary.

If there are any questions, please feel free to call me.  Thank you for your anticipated cooperation herein.

Very truly yours,

EMOMOTIMI S. BRISIBE
Senior Assistant City Attorney

ESB:mmm
Enclosure

c:   Cliff Leonard, Risk Manager

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Combined Underwriters of Miami
8240 N.W. 52nd Terrace, Suite 408
Miami, Florida 33166

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

☐ Agent
☐ Addressee

B. Received by ( Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*        ☐ Yes

2. Article Number
   *(Transfer from service label)*    7099 3400 0014 4848 5855

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

OFFICE OF THE CITY ATTORNEY

## *City of Miami Beach*

F    L    O    R    I    D    A



**JOSE SMITH**
**City Attorney**

**Telephone:** (305) 673-7470
**Facsimile:** (305) 673-7002

August 28, 2009

Mike Thorton, Claims Supervisor
Cannon Cochran Management Services, Inc.
2 East Main Street, Suite 208
Danville, IL 61832

    RE:    Named Insured:    Boucher Brothers Management, Inc. and
                                  Boucher Brothers Miami Beach, LLC d/b/a
                                  Boucher Brothers
                Additional Insured:    City of Miami Beach
                Policy No.:    ZYB008426
                Claimant:    Basheba Chandler-Myers, as Personal
                                  Representative of the Estate of
                                  Norman Jerome Banks, Jr.
                D/A:    April 19, 2003

Dear Mr. Thorlton:

This is in response to your letter of August 24, 2009 pertaining to the City's request for defense and indemnity under Genesis Indemnity Insurance Policy # ZYB008426.

You are not exactly correct in your assertion that there are no allegations relating to the use, representation, or other as against Boucher Brothers in the lawsuit. A review of paragraph 14 (B) of plaintiff's complaint previously provided to you alleges that the negligence of the City is partly attributable to the fact that the area where the drowning occurred was an area where the public was invited and attracted to the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains and parking, along with the <u>operation of concessions, renting beach lounges, chairs, watercraft and/or other water recreation equipment.</u> Further, Rufus Nathaniel Myers, the Step Father of the deceased Norman Banks, Jr., indicated in Pages 34-37 of his deposition of November 3, 2008 (attached hereto) that when they got to the beach on the date of the accident, they set up in an area of the beach where there was a concession stand available and that he attempted to rent an umbrella/tent from the concession stand, but was unsuccessful because of the non-

**1700 Convention Center Drive — Fourth Floor — Miami Beach, Florida 33139**

*Mike Thorton, Claims Supervisor*
*August 28, 2009*
*Page 2 of 4*

availability of staff at the concession stand: These were essentially the same allegations and issues that arose and were analyzed in the <u>Monticello</u> opinion.

However, be that as it may, the issue of whether there are allegations made against the insured concessionaire are not germane to the City's entitlement to coverage as an additional insured under the policy. As you may have glimpsed from a review of the <u>Monticello</u> opinion provided by us, you may have noticed that the Federal Court stated in the agreed statement of facts section of the opinion that the Florida Supreme Court affirmed the trial Court's dismissal with prejudice of the claims against Hurricane Beach Rentals for failure to state a cause of action on the ground that the beach concessionaire did not owe a duty to warn swimmers of the dangers in the ocean. Consequently, the Court's subsequent analysis and opinion was not based on whether there were allegations against the concessionaire, but rather as you noted in the fourth paragraph of your letter, on whether there was a connection between the acts of the named insured/concessionaire and the liability of the City of Miami Beach.

Before discussing the connection issue, it is pertinent to note that on the issue of whether according to the terms of the additional insured endorsement there is coverage for the City of Miami Beach for its own negligence or whether coverage is only provided for the City's vicarious liability for negligence of the concessioner, the Federal Court on page 19 of the opinion applied Florida Law and opined that the "additional insured" (i.e. the City) provision "must be construed against them (the insurer)" in favor of the additional insured unless specific language limiting coverage to the vicarious liability situation is utilized in the policy. I am not aware of any specific language in the instant insurance policy limiting coverage to vicarious liability. Consequently, we believe that the instant policy will be construed to provide coverage to the City of Miami Beach based on settled Florida Law.

On the connection issue that you raised in paragraph four of your letter, I would once again refer you to page 21 of the <u>Monticello</u> opinion wherein the Federal Court addressed the issue of whether according to the terms of that policy, the liability of the City of Miami Beach did arise out of the any of the operations of the concessionaire performed for the City? The Court's analysis of this issue particularly focused on the interpretation of "arising out of". The Court stated that:

> The Court once again referred to the Florida Supreme Court decision in Breaux and Poleyeff, wherein the Florida Supreme Court ruled that the reason the City owed a duty of care to Breaux and Poleyeff was because the City was operating a "public swimming area" at the 29th Street location, largely based upon the operations of Hurricane Beach Rentals. The opinion went further to indicate that Hurricane Beach Rentals was operating as a concessionaire for the City of Miami Beach on the beach at 29th Street pursuant to a license issued by the City. Hurricane Beach Rentals was required by the City to furnish the

insurance policy which is the subject of the action, naming the City as an additional insured, before the license would be issued. While it is true that the Florida Third District Court of Appeal has held that Hurricane Beach Rentals owed no duty to Breaux of Poleyeff, the operation of Hurricane Beach Rentals at 29th Street, being directly connected to a "public swimming area," created a legal duty owed by the City to Breaux and Poleyeff (Emphasis added). Otherwise stated, there is a causal connection or relationship that is "more than a mere coincidence" between the beach chair/umbrella operation at the "public swimming area" as used by Poleyeff and Breaux on the day of their deaths and the legal duty of care owed by the City to Breaux and Poleyeff. The evidence substantiates that both families were attracted to this "public swimming area" precisely because of the availability of the concession services which each utilized on the date in question. The concession services also led to the concentration of beach goers at the 29th Street location, which further gave the impression that the 29th Street location was a public swimming area. Thus, the triggering language of the A1 Endorsement is satisfied as the liability of the City arose out of the operations of Hurricane Beach Rentals in operating the beach chair/umbrella concession for the City which was used by both Breaux and Poleyeff since, without dispute, both were present at the 29th Street Beach due to the operation of Hurricane Beach Rentals.

The above referred opinion of the Monticello Court is almost on all fours with the facts of the instant case. The plaintiffs in the instant case are alleging in their complaint that the operation of a concession stand at the area of the beach where the drowning occurred (concession stand at that area is operated by Boucher Brothers) creates an attraction and invitation for members of the public to use that area of the beach as a public swimming area. As indicated earlier above, the Step Father of the deceased indicated that they set up in an area of the beach with a concession stand present (that stand happens to be the Boucher Brothers stand). The Monticello opinion clearly stated that the operation of Hurricane Beach Rentals at 29th Street, being directly connected to a "public swimming area" created a duty owed by the City to Breaux and Poleyeff. Similarly in the instant case, the presence of the concession stand, which caused the plaintiffs to set up at the location where the drowning occurred, is directly connected to a public swimming area inviting the public as alleged in plaintiffs' complaint, which in turn creates the duty owed by the City of Miami Beach to the plaintiffs in this case. It is not a mere coincidence that the plaintiffs set up at this location. The Step Father of the deceased actually indicated that he sought to procure an umbrella/tent from the concessionaire at that location.

The Monticello opinion indicated that there was a causal connection or relationship that is "more than a mere coincidence" between the beach chair/umbrella at the "public swimming area as used by Breaux and Poleyeff on the day of their deaths and the legal duty of care owed by the City to Breaux and Poleyeff. The same is true in the instant case, the

*Mike Thorton, Claims Supervisor*
*August 28, 2009*
*Page 4 of 4*

Step Father of the deceased clearly stated in his deposition testimony that they not only set up at the location of the concession stand, but he sought to procure a tent/umbrella from the concessionaire (Boucher Brothers) as was the case in Breaux and Poleyeff where Breaux and Poleyeff set up at that particularly location in order to use the concession facilities. If it was a mere happenstance that the plaintiffs were set up at this location, then the Step Father would not have sought to rent a tent/umbrella from the concessionaire at that location. Further, as was the case in Breaux and Poleyeff, it is the presence of the concession stand (where umbrella/tents are available) at this public swimming area used by the plaintiffs in the instant case that creates the legal duty of care owed by the City of Miami Beach to the plaintiffs.

I thank you for your attention to this matter so far and I hope the additional information and explanation provided in this letter per your request helps you in arriving at a decision to defend and indemnify the City of Miami Beach. We kindly request that you provide a response within seven (7) days to this letter and make the necessary arrangements to defend and indemnify the City of Miami Beach in this lawsuit.

In the event that I do not receive a response within that time frame, I reserve the right to file an appropriate claim for bad faith, contribution and any other existing causes of action under Florida law, including and not limited to an action for declaratory relief so that the Court may appropriately decide coverage, if necessary.

If there are any questions, please feel free to call me. Thank you for your anticipated cooperation herein.

Very truly yours,

EMOMOTIMI S. BRISIBE
Senior Assistant City Attorney

ESB:mm
Enclosure

c:      Cliff Leonard, Risk Manager

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 06-20459-CIV-GOLD

MONTICELLO INSURANCE COMPANY,
a Delaware Corporation,

  Plaintiff,

v.

CITY OF MIAMI BEACH; ISRAEL POLEYEFF,
as Personal Representative of Eugenie Poleyeff;
and FREDERICA BREAUX, as Administratrix of the
Estate of Zachary Charles Breaux,

  Defendants.
_____/

## MEMORANDUM OF DECISION SETTING FORTH FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PHASE I OF BIFURCATED INSURANCE DISPUTE

### I. INTRODUCTION

  Phase I of this bifurcated insurance case centers on whether the City of Miami

Beach qualifies for coverage as an additional insured under an insurance policy issued by

Monticello Insurance Company to Hurricane Beach Rentals (a beach concessionaire) for

two drownings that occurred in the Atlantic Ocean.[1] The policy contains an "additional

insured" endorsement (the "AI Endorsement") which provides that the City of Miami Beach

---

[1] The City of Miami Beach entered into Coblentz agreements, a settlement and release agreement between an insured and an injured party in which the insured assigns to the injured party all causes of action that it has against a liability insurer.  The City of Miami Beach settled with the estate of Breaux for the sum of  $5,000,000.00; with the City paying $160,000 and assigning its right to the insurance claim for the remaining amount. The City settled with Poleyeff for $750,000; the city to pay $40,000 and similarly assigning its right to the insurance claim for the remaining amount.

1



EXHIBIT
D

is an insured "but only with respect to liability arising out of the operations performed for [the City of Miami Beach] by or on behalf of [Hurricane Beach Rentals]." Joint Ex. 2.

On March 2, 2008, this Court approved, at the request of the parties, a bifurcated procedure for trial as between the coverage issue and the issues pertaining to the good faith and reasonableness of the settlement agreement [DE 110].[2] The parties also agreed that the dispositive issue of coverage should be addressed first at a non-jury trial. Accordingly, a non-jury trial was held on February 9, 2009 at which time the Court heard from the following witnesses: Gary Sanborn, William Gunter, Jr., Frederica Breaux and Rabbi Israel Poleyeff.[3] The following additional testimony was received by depositions: Michael Suskind, Shawn Galicic, Jason Albarano, Willian Galicic, John Albarano, Vincent Andreano, Jeff Kraus, and Deb Vilas.

In accordance with Fed. R. Civ. P. 52(a)(1), I hereby enter the following findings of fact and conclusions of law.

## II. **AGREED STATEMENT OF FACTS**

A.   Effective December 9, 1996, Monticello issued a commercial general liability policy to Hurricane Beach Rentals, a concessionaire which rented beach equipment and watercraft on Miami Beach, which insurance policy was required by the City as a condition of licensure for Hurricane Beach Rentals

---

[2] In my prior Order Denying Plaintiff's Motion to Dismiss Counterclaim, I held that in Florida, to recover under a Coblentz agreement, the injured party must prove: (1) coverage; (2) wrongful refusal to defend; and, (3) that the settlement was reasonable and made in good faith." *Monticello Ins. Co. v. City of Miami Beach*, 2008 WL 906537, *3 (S.D. Fla., Apr. 3, 2008) (citations omitted).  As agreed to by the parties, the questions of wrongful refusal to defend and the reasonableness of the settlement will be addressed in Phase II of the bifurcated trial.  See Agreed Fact II.

[3] Gary Sanborn is a managing general agent with Crump Insurance Services, which at the time of the drownings represented and underwrote policies for Monticello Insurance Company. William Gunter, Jr. is Plaintiff's expert.

to be permitted to operate its concession on the beach at 29th Street.

B.   Hurricane Beach Rentals was required to obtain an insurance policy listing the City of Miami Beach as an additional insured in order to obtain its occupational license from the City of Miami Beach allowing it to operate as a concessionaire on the beach.

C.   The insurance policy contains an additional insured endorsement naming the City of Miami Beach as an additional insured "but only with respect to liability arising out of the operations performed for such additional insured by or on behalf of the named insured."

D.   The insurance policy does not define the terms "arising out of" or "operations."

E.   The policy states that the business description for Hurricane Beach Rentals is "beach chair/umbrella/cabana rentals."

F.   The policy does not contain specific language stating that coverage for the City is limited to its vicarious liability for the negligence of Hurricane Beach Rentals or that that there is no coverage for the City's own negligence.

G.   On February 20, 1997 Eugenie Poleyeff and her husband, Rabbi Israel Poleyeff, were paying guests at the Saxony Hotel at 32nd Street on Miami Beach. They walked along the beach to the area behind the Seville Hotel at 29th Street so that they could use the beach and ocean in an area where beach rental equipment was available, and rented a double beach lounge and umbrella from Hurricane Beach Rentals.

H.   On February 20, 1997 Frederica Breaux, her husband, Zachary Charles Breaux and their three daughters were paying guests at the Seville Hotel at 29th Street on Miami Beach, and rented a double beach lounge from Hurricane Beach Rentals.

I.   Mrs. Poleyeff went into the ocean and became caught in a rip current and screamed for help. Zachary Breaux attempted to rescue her, however, both of them drowned.

J.   The Estates of Poleyeff and Breaux subsequently brought separate wrongful death suits in Dade County Circuit Court against the City of Miami Beach, the Seville and Saxony hotels, and Hurricane Beach Rentals.

K.   In the wrongful death lawsuits brought by Breaux and Poleyeff in Dade County Circuit Court against the City of Miami Beach, the Seville and

3

Saxony hotels and Hurricane Beach Rentals, the following allegations against the City of Miami Beach were made:

> 39. That the Defendant, MIAMI BEACH, breached its duties owed to ZACHARY BREAUX (and EUGENIE POLEYEFF) in the following respects:
>
> A. Failed to operate a designated water recreation area in a reasonably safe manner.
> B. Failed to have a lifeguard station in an area where the public was invited and attracted to use the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains, and parking , along with the operation of concessions renting beach lounges, chairs, watercraft and/or other water recreation equipment.
> C. Failed to have adequate, trained lifeguards present to protect users of the beach and/or ocean in an area where the public was invited and attracted to use the beach and ocean by virtue of the existence of public restrooms, showers, drinking fountains, and parking, along with the operation of concessions renting beach lounges, chairs, watercraft and/or other water recreation equipment.
> D. Failed to have a warning system for rip currents and/or other dangerous surf conditions by use of warning signs, warning flags, condition boards, or other warning means.
> E. Failed to have available on the beach safety equipment such as throw bags with attached lines, life preservers and/or a dedicated emergency telephone line.
> F. Failed to have their roving lifeguards adequately protect users of the beach and ocean in areas not proximate to lifeguard stations.
> G. In the alternative, failed to post warnings that the beach was unguarded and that swimmers should proceed eight blocks south to 21st Street or 6 blocks north to 35th Street, where lifeguards were present, before entering the ocean.

L. The trial court dismissed with prejudice the claims against the two hotels and Hurricane Beach Rentals for failure to state a cause of action on the ground that the hotels and beach concessionaire did not owe a duty to warn swimmers of dangers in the ocean. The trial court later entered summary judgment in favor of the City of Miami Beach based on an argument that the negligent acts alleged were planning-level decisions subject to sovereign immunity. The estates of Breaux and Poleyeff appealed all rulings.

M. On appeal, the Third District Court of Appeals affirmed the trial court's dismissal of Hurricane Beach Rentals and the two hotel defendants, concluding that they did not owe a duty to warn swimmers of dangers in the ocean. *Poleyeff v. Seville Beach Hotel Corp.*, 782 So. 2d 422 (Fla. 3d DCA 2001). Specifically, the Third District Court of Appeals, in affirming dismissal of the claims against Hurricane beach Rentals stated, "...[W]e hold that an entity which does not control the area or undertake a particular responsibility to do so has no common law duty to warn, correct, or safeguard others from naturally occurring, even if hidden, dangers common to the waters in which they are found." Id. at 424.

N. The Third District Court of Appeals also noted with respect to Hurricane

4